UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MICHELLENE BARRETT,

                *Plaintiff*,

– against –

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

                *Defendant*.

**MEMORANDUM & ORDER**
24-cv-00574 (NCM) (RML)

---

**NATASHA C. MERLE**, United States District Judge:

    Plaintiff Michellene Barrett brings this action against the City of New York for religious discrimination and infringment on her freedom of religion and right to due process. Specifically, plaintiff asserts claims for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as claims pursuant to 42 U.S.C. § 1983 for violations of plaintiff's rights secured under the First and Fourteenth Amendments. Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's complaint in its entirety. For the reasons stated below, defendant's motion to dismiss is GRANTED.

## BACKGROUND

    Plaintiff was employed as a teacher by the Department of Education of the City of New York ("DOE") from 2014 to 2022. Amended Complaint ("AC") ¶¶ 4, 18, ECF No. 10. Plaintiff's amended complaint alleges that she "elected not to be vaccinated with a COVID-19 vaccine due to her religious practice." AC ¶ 10. Plaintiff alleges that she "is a Christian, and her personally held religious belief prevented her from being vaccinated."

1

AC ¶ 11. Plaintiff's amended complaint does not detail how or when she was informed by the DOE that she needed to receive the COVID-19 vaccine, but states that at some point plaintiff "applied for a religious exemption accommodation," and her application was denied on September 24, 2021. AC ¶¶ 11–12. Plaintiff was placed on leave without pay by the DOE on October 1, 2021, and alleges that she was no longer allowed to enter her school building. AC ¶ 13. Plaintiff also alleges that she was told that "her fingerprints" were placed on a "Problem Code" database which "tags her file with misconduct, and blocks her from future employment with the DOE and most private schools and agencies in New York City." AC ¶¶ 14–15.[1] Plaintiff alleges that she "appealed the decision" but was denied. AC ¶ 17. Plaintiff was subsequently terminated from her employment on March 17, 2022 because she had not received the COVID-19 vaccine. AC ¶ 18.

Plaintiff brought the instant action on January 26, 2024, alleging religious discrimination in violation of Title VII of the Civil Rights Act, violation of the Equal Protection Clause of the Fourteenth Amendment, and a Section 1983 claim for violation of her First and Fourteenth Amendment rights. AC ¶¶ 22–59. On October 28, 2024, defendant moved to dismiss plaintiff's amended complaint. *See* Mot. to Dismiss Am. Compl. ("Mot."), ECF No. 19. The Court held oral argument on defendant's motion on May 28, 2025. *See* Minute Entry dated May 28, 2025. Shortly thereafter, plaintiff filed a status report in which plaintiff corrected a factual assertion made at oral argument and

---

[1] Plaintiff's amended complaint alleges that she was informed about this action on October 2, 2023. AC ¶ 14. However, she also alleges that she was told this information "the very same day she was told she had been placed on" leave without pay. AC ¶ 14. Her amended complaint alleges she was told she was placed on leave without pay on October 1, 2021. AC ¶ 13. Presumably, plaintiff alleges she was informed of the "Problem Code" in October 2021, not October 2023.

2

accordingly "withdr[ew]" plaintiff's third, fourth and sixth claims for relief. Status Report, ECF No. 25.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[2] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail," but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 125 (2d Cir. 2023).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so

---

[2] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in a complaint. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I. Plaintiff's Withdrawn Claims

Plaintiff's June 13, 2025 status report states that she withdraws her third, fourth and sixth claims for relief. *See* Status Report. Those claims are: a Title VII claim for failure to engage in the interactive process, a claim of selective enforcement of the law in violation of the Equal Protection clause of the Fourteenth Amendment, and a claim for "a violation of § 1983." AC ¶¶ 34–40, 47–59.

The Court construes plaintiff's letter as a notice of voluntary dismissal pursuant to Rule 41(a)(1)(A) of the Federal Rules of Civil Procedure. Under that rule, a "plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). Here, defendant has not served an answer or a motion for summary judgment. While defendant has filed a motion to dismiss, this action does not terminate a plaintiff's right to voluntary dismissal. *See Lalli v. Warner Bros. Discovery*, No. 24-cv-03178, 2025 WL 357774, at *1 (S.D.N.Y. Jan. 31, 2025) ("A motion to dismiss is neither an answer nor a motion for summary judgment.").

While there is "some disagreement among courts in this Circuit regarding whether [Rule 41(a)(1)(A)] permits . . . the voluntary dismissal of individual claims," there are "numerous other courts in this Circuit that have interpreted [the rule] to permit the withdrawal of individual claims." *Burgos v. City of New York*, No. 18-cv-01150, 2019 WL 1299461, at *2 n.4 (S.D.N.Y. Mar. 21, 2019); *see also Century Sur. Co. v. Vas & Sons Corp.*, No. 17-cv-05392, 2018 WL 4804656, at *2 (E.D.N.Y. Sept. 30, 2018) (collecting cases);

4

*Nix v. Off. of the Comm'r of Baseball*, No. 17-cv-01241, 2017 WL 2889503, at *3 n.2 (S.D.N.Y. July 6, 2017). Additionally, those cases which have found voluntary dismissal of individual claims to be inappropriate have been instances where the Court found that the plaintiff was attempting dismissal to avoid the court's jurisdiction. *See Robbins v. City of New York*, 254 F. Supp. 3d 434, 436–37 (E.D.N.Y. 2017) (plaintiff attempted to dismiss single federal claim so that her case could be remanded to state court); *Milton v. Ocwen Loan Servicing, LLC*, No. 19-cv-05983, 2020 WL 13568757, at *1 (E.D.N.Y. Feb. 7, 2020) (plaintiff not permitted to withdraw individual claims in an attempt to "avoid this Court's jurisdiction and Defendants' motion to dismiss, for sanctions, and for a filing injunction").

Here, there is no indication that plaintiff withdraws her individual claims for the purpose of avoiding the Court's jurisdiction, and considering that defendant has already moved to dismiss these claims pursuant to Rule 12(b)(6), the Court finds that plaintiff has voluntarily dismissed her third, fourth and sixth claims for relief in accordance with Rule 41(a)(1)(A). *See also Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 809 (2d Cir. 2022) ("[D]ismissal under . . . Rule 41(a)(1)(A) . . . requires no court action to be effective."). Thus, plaintiff's claims are dismissed pursuant to Rule 41(a)(1)(A)(i).

## II.   Title VII

Plaintiff's amended complaint lists three separate counts pursuant to Title VII: (1) religious discrimination, (2) failure to provide a reasonable accommodation, and (3) failure to engage in the interactive process.[3] AC ¶¶ 22–36. However, each count contains

---

[3]   Plaintiff has voluntarily dismissed her third claim for relief, which is her claim for failure to engage in the interactive process. *See* Status Report; *see also* AC ¶¶ 34–36. Even if plaintiff had not done so, "failure to engage in the interactive process" is not an independent cause of action under Title VII. *Shahid-Ikhlas v. New York & Presbyterian*

5

factual allegations supporting religious discrimination based on a failure to accommodate plaintiff's sincere religious beliefs. Title VII makes it unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a).

These prohibitions, often referred to as the "disparate treatment" and "disparate impact" provisions of Title VII, "are the only causes of action under Title VII." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). Claims based on an employer's failure to accommodate a religious practice are disparate treatment claims. *See id.* at 772–73. Plaintiff's complaint, under both her first cause of action "for religious discrimination," and her second cause of action, "reasonable accommodation," states that defendant unlawfully discriminated against plaintiff "in the terms and conditions of her employment on the basis of her religion." AC ¶¶ 25, 32. Both causes of action are based on the same allegations of wrongdoing—plaintiff's termination for refusal to take the COVID-19 vaccine, which plaintiff alleges conflicts with her sincerely held religious beliefs. AC ¶¶ 24, 33.

---

*Hosp., Inc.*, No. 22-cv-10643, 2023 WL 3628151, at *6 (S.D.N.Y. May 5, 2023), *report and recommendation adopted*, 2023 WL 3626435 (May 24, 2023) (finding that failure to engage in a good faith interactive process "can be introduced as evidence tending to show" discrimination, but it is not a cause of action); *see also Myers v. Schuyler Hosp.*, No. 23-cv-06727, 2025 WL 388852, at *2 n.1 (W.D.N.Y. Feb. 4, 2025) (noting that "no such cause of action exists" under Title VII for failure to engage in a cooperative dialogue).

Accordingly, the Court considers plaintiff's Title VII causes of action as a single claim for failure to accommodate plaintiff's sincere religious beliefs resulting in disparate treatment in violation of Title VII. *See Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 319 n.15 (E.D.N.Y. 2024) ("Because both counts appear to allege failure to accommodate, the Court considers only that theory.").

### A. Failure to Accommodate

It is "an unlawful employment practice under Title VII for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of [its] employees[.]" *Zacharowicz v. Nassau Health Care Corp.*, 177 F. App'x 152, 153 (2d Cir. 2006) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977)). To succeed on a religious discrimination claim for failure to accommodate, "a plaintiff must first establish a prima facie case by showing that (1) she held a bona fide religious belief conflicting with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement." *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 185–86 (2d Cir. 2025). After a plaintiff has established a prima facie case, the employer "is required to show that it offered her a reasonable accommodation or that doing so would cause undue hardship." *Marte v. Montefiore Med. Ctr.*, No. 22-cv-03491, 2022 WL 7059182, at *3 (S.D.N.Y. Oct. 12, 2022) (citing *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)).

To satisfy the first prong of a prima facie case, a plaintiff must show that the belief at issue is "sincerely held" and "religious in nature." *Matos v. Discovery Commc'ns, LLC*, 750 F. Supp. 3d 307, 319 (S.D.N.Y. 2024). Title VII defines religion as "includ[ing] all aspects of religious observance and practice, as well as belief." *Id.* at 318. Additionally, a

plaintiff must establish that the belief conflicts with a requirement of employment. *Russo*, 129 F.4th at 185–86.

Defendant argues that plaintiff's Title VII claims fail for two reasons. First, defendant argues that placement on leave without pay for failure to meet a condition of employment does not constitute "discipline" for purposes of a failure to accommodate claim. Mot. 16. Second, defendant argues that plaintiff's complaint only alleges a personal preference against the COVID-19 vaccine and fails to articulate a religious basis for her objection. Mot. 17–18.[4] The Court agrees that plaintiff has failed to allege a sincere religious belief that conflicted with a requirement of her employment.

i. <u>Prima Facie Case</u>

The Court does not question plaintiff's statement that she is a Christian, or that she holds sincere religious beliefs stemming from the practice of her Christian faith. However, plaintiff has not alleged the Christian teaching in which she sincerely believes and which conflicts with the COVID-19 vaccine. Plaintiff's complaint states only that she "is a Christian, and her personally held religious belief prevented her from being vaccinated." AC ¶ 11. However, "[b]ald allegations that a plaintiff has a religious belief and that those religious beliefs conflict with an employment requirement are insufficient to state a claim for religious discrimination under Title VII." *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023).

Plaintiff has not, for example, alleged a Christian belief or scripture that prohibits her from being vaccinated, or provided examples of how plaintiff abides by those Christian beliefs—such as by refusing other vaccinations or medical interventions. *Cf.*

---

[4] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

*Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-cv-07190, 2024 WL 3274455, at *2 (S.D.N.Y. July 2, 2024) (finding plaintiff established prima facie case by alleging belief that if a Catholic "comes to an informed judgment they should not receive a vaccine, then the Catholic Church requires that the person refuse the vaccine" and that plaintiff had "practiced his faith by declining medical interventions in the past"); *Haczynska*, 738 F. Supp. 3d at 311, 321 (finding plaintiff established prima facie case by alleging personal belief that the COVID-19 vaccination had a "link to abortion" and taking it "would be a desecration of her body as a temple of God"); *Corrales v. Montefiore Med. Ctr.*, No. 22-cv-03219, 2023 WL 2711415, at *5 (S.D.N.Y. Mar. 30, 2023) (plaintiff established prima facie case by alleging her faith "does not allow defilement and that the uncleanness involved in the manufacturing of the vaccines would cause her to defile herself").

Plaintiff's assertion that she is a Christian and that she has a personally held religious belief preventing her from being vaccinated is not sufficient because she does not allege what that belief is or how that belief conflicts with vaccination. Curiously, plaintiff also argues in her opposition that "Title VII's protections [] extend [to] nonreligious beliefs if related to morality and ultimate ideas about life, purpose, and death." Opp'n to Def. Mot. to Dismiss ("Opp'n") 11, ECF No. 20. This argument is puzzling as plaintiff's complaint alleges that she was discriminated against for a religious belief, rather than a "nonreligious belief . . . related to morality and ultimate ideas about life, purpose, and death." AC ¶ 11; Opp'n 11. Further compounding confusion, plaintiff's opposition does not then state any nonreligious belief based on morality, life, purpose, or death.

Plaintiff has failed to draw a connection between her vaccination refusal and any Christian teaching or to an ultimate question about life, purpose, and death. Accordingly,

9

plaintiff has failed to establish a prima facie case of religious discrimination for failure to accommodate in violation of Title VII. As plaintiff's Title VII claims are dismissed on this basis, the Court need not consider defendant's additional arguments that plaintiff's placement on leave without pay did not constitute discipline.

### III. First Amendment Claims

Plaintiff's amended complaint alleges a violation of plaintiff's First Amendment rights pursuant to 42 U.S.C. § 1983. AC ¶¶ 41–46. While the caption of plaintiff's fifth claim for relief reads "violation of the First Amendment right to *free speech* and religion," plaintiff's complaint contains no allegations regarding protected speech. *See* AC ¶¶ 41–46 (emphasis added). The body of this section alleges that defendant acted "in violation of Plaintiff's rights to practice her religion guaranteed under the First Amendment to the Constitution." AC ¶ 46. In contrast, plaintiff's opposition to defendant's motion to dismiss presents two distinct theories in support of plaintiff's First Amendment cause of action: (1) First Amendment retaliation for plaintiff's speech about her religious beliefs, *see* Opp'n 20, and (2) a Free Exercise claim, *see* Opp'n 20. Defendant argues first that the Court should not consider plaintiff's First Amendment retaliation claim, raised for the first time in opposition to defendant's motion to dismiss. Reply in Further Supp. of Def. Mot. to Dismiss Am. Compl. ("Reply") 3, ECF No. 21. Defendant next argues that plaintiff's Free Exercise claim fails to plausibly allege a claim for relief and should be dismissed. *See* Mot. 22–23. The Court agrees with defendant on both arguments.

#### A. First Amendment Retaliation

To allege a prima facie claim of First Amendment retaliation for protected speech as a government employee, a plaintiff must allege that (1) her speech was constitutionally protected, (2) she suffered an adverse employment action, and (3) a causal relationship

10

existed between the two such that the speech was a substantial or motivating factor for the adverse employment action. *Burkybile v. Bd. of Educ. of the Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 313 (2d Cir. 2005). To determine whether speech is constitutionally protected, courts engage in a two-prong inquiry. First, the court will consider "whether the subject of the employee's speech was a matter of public concern." *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011). "Speech deals with matters of public concern when it can be fairly considered as relating to matters of political, social, or general interest to the community or value and concern to the public." *Specht v. City of New York*, 15 F.4th 594, 600 (2d Cir. 2021). Second, the court considers "whether the employee spoke as a citizen rather than solely as an employee." *Jackler*, 658 F.3d at 235.

Plaintiff's complaint does not allege a First Amendment retaliation claim. The first appearance of this claim is contained in plaintiff's opposition to defendant's motion to dismiss. *See* Opp'n 20. In her opposition, plaintiff states that she engaged in constitutionally protected speech, "namely discussing her religious beliefs." Opp'n 20. No such factual allegation is contained in plaintiff's complaint.[5] The complaint "plainly alleges" that the plaintiff "was terminated for failing to comply with the vaccine mandate for which [she] was denied a religious exemption," rather than any religious speech. *Fugelsang v. Dep't of Educ. of N.Y.C.*, No. 23-cv-08332, 2025 WL 974276, at *4 n.4

---

[5] To the extent that plaintiff alleges that her vaccine exemption request constituted "discussing her religious beliefs," this allegation does not support a plausible inference that plaintiff engaged in constitutionally protected speech. Opp'n 20. Where an employee's speech was "made through internal channels," courts have held that such instances constitute employee speech not protected by the First Amendment. *Taylor v. N.Y.C. Dep't of Educ.*, No. 11-cv-07833, 2012 WL 3890599, at *4 (S.D.N.Y. Sept. 6, 2012). Here, plaintiff requested, from her employer, that she be exempted from complying with a condition of her employment. Therefore, plaintiff's accommodation request was made in her capacity as an employee rather than a citizen and does not plausibly allege protected speech. *See also Smith v. City of New York*, 130 F. Supp. 3d 819, 831–32 (S.D.N.Y. 2015), *aff'd*, 664 F. App'x 45 (2d Cir. 2016).

(E.D.N.Y. Mar. 31, 2025). Thus, rather than alleging she suffered an adverse employment action due to constitutionally protected speech concerning her religion, plaintiff's complaint alleges that her religious practice was burdened when she was ultimately terminated for practicing her beliefs. Accordingly, the Court only considers whether plaintiff has sufficiently alleged a violation of the Free Exercise Clause of the First Amendment, as pled in her complaint.

### B. Free Exercise

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I. The requirements of this Amendment apply to the states through the Fourteenth Amendment. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). Where a law incidentally burdens religious practices, but the law is neutral and of general applicability, the government need only show "a rational basis for its enforcement" to pass constitutional muster. *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002). Here, plaintiff appears to concede that rational basis review applies to the DOE's vaccine mandate ("Vaccine Mandate"), *see* Opp'n 20, and in any event has alleged no facts to show that the Vaccine Mandate at issue was not facially neutral and applied to all teachers employed by the DOE, *see Hewitt-Simmons v. Adams*, No. 23-cv-06001, 2024 WL 4362550, at *4 (E.D.N.Y. Sept. 30, 2024). In fact, the Second Circuit Court of Appeals has considered the DOE Vaccine Mandate at issue and found that it was facially neutral and generally applicable. *See Fugelsang*, 2025 WL 974276, at *5 (citing *Kane v. De Blasio*, 19 F.4th 152, 164 (2d Cir. 2021) ("*Kane I*") (per curiam)). Therefore, to survive defendant's motion to dismiss, plaintiff must plausibly allege that there was no rational basis for the Vaccine Mandate's

12

enforcement. *Okwedy v. Molinari*, 69 F. App'x 482, 484 (2d Cir. 2003) (finding district court properly dismissed Free Exercise Clause claim where plaintiff did not show that defendant lacked a rational basis for enforcement of government policy).

Individuals challenging the constitutionality of a law enforced by the government may either bring a "facial challenge" or an "as-applied" challenge. A "facial challenge" to a rule, regulation, or statute considers only the content of the challenged law itself, "not its application to the particular circumstances of an individual." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). In contrast, an "as-applied" challenge requires "analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Id*. Plaintiff's complaint is not clear as to whether she brings a facial or as-applied challenge; thus the Court will address both.

          i.      <u>History of the DOE Vaccine Mandate in the Second Circuit</u>

The constitutionality of the DOE's Vaccine Mandate has been subject to vigorous challenge and judicial review in this Circuit.

The Vaccine Mandate was first issued on August 24, 2021. *Kane I*, 19 F.4th at 159. On September 1, 2021, the United Federation of Teachers ("UFT") filed a formal objection to the Vaccine Mandate because it did not provide for any medical or religious accommodations. *Id*. at 160. The UFT and the City entered arbitration, and on September 10, 2021, an independent arbitrator issued an arbitration award ("Arbitration Award") setting forth a process and standards for determining, among other things, religious accommodations to the Vaccine Mandate. *Id*. Pursuant to the Arbitration Award, religious accommodation requests were to be denied "where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is

13

readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature," and that requests were to be "considered for recognized and established religious organizations." *Id.* A group of plaintiffs whose religious accommodation requests were denied under the Arbitration Award sued and sought preliminary injunctions, which were denied. *Id.* at 158, 160–62. Plaintiffs appealed the denials, and the Second Circuit considered the appeal in *Kane I*. *See* 19 F.4th 152 (2d Cir. 2021) (per curiam). In *Kane I*, the Second Circuit first affirmed the district court's finding that the plaintiffs were unlikely to establish that the Vaccine Mandate itself was facially unconstitutional. *Id.* at 158. Second, the Court reversed the district court's findings that the plaintiffs were unlikely to succeed on "as-applied" challenges to the Vaccine Mandate and found that the standards articulated by the Arbitration Award likely violated the First Amendment as applied to the plaintiffs in that case. *Id.* at 167.

Following *Kane I*, the City established a City of New York Reasonable Accommodations Appeals Panel ("Citywide Panel") to review religious accommodation requests that had been rejected under the standards of the Arbitration Award. *Keil v. City of New York*, No. 21-3043-cv, 2022 WL 619694, at *1 (2d Cir. Mar. 3, 2022) (summary order) ("*Keil*"). Following denials of religious accommodation requests by the Citywide Panel, certain plaintiffs contested the constitutionality of the Citywide Panel's new process and determinations, and again sought a preliminary injunction, which was denied. Plaintiffs appealed the denial, and the Second Circuit affirmed in *Keil v. City of New York*. *Id.* at *4. Following *Keil*, the plaintiffs filed a consolidated amended complaint in the Southern District of New York which challenged the Citywide Panel and again challenged the Vaccine Mandate. The consolidated amended complaint was eventually dismissed in the district court, and plaintiffs again appealed.

The Second Circuit considered this appeal, combined with another case arising out of the Eastern District of New York, in *New Yorkers for Religious Liberty, Inc. v. New York*, 125 F.4th 319, 325 (2d Cir. 2024) ("*NYFRL*"). In *NYFRL*, the Second Circuit again found that the "City's Vaccine Mandate, in all its iterations, was neutral, generally applicable, and facially constitutional under the Free Exercise Clause." *Id.* at 330. After finding that the Vaccine Mandate, combined with the procedures utilized by the Citywide Panel, was facially constitutional, the Court considered whether the application of the Vaccine Mandate to each plaintiff also passed constitutional muster. *See id.* at 330–32. In so doing, the court considered whether the Citywide Panel properly denied religious accommodation requests by considering the allegations presented by each plaintiff. *See id.* at 333–35.

In *NYFRL*, the Court upheld the lower court's findings that some plaintiffs whose religious accommodation requests had been subject to review by the Citywide Panel had failed to state a claim because they did not "make[] a more-than-conclusory allegation that" the reason for the denial was erroneous or pretextual. *Id.* at 333–34. However, two other plaintiffs were found to have stated cognizable as-applied First Amendment challenges—the first was a plaintiff who elected to take the vaccine following denial of her original religious exemption request and so never received additional review by the Citywide Panel, *see id.* at 334–35, and another plaintiff who alleged that the Citywide Panel denied her religious accommodation request because it improperly found her religious objection "too idiosyncratic rather than . . . not sincerely held or non-religious in nature." *Id.* at 335.

It is against this history that the Court considers plaintiff's First Amendment Free Exercise claim.

15

ii. <u>Facial Challenge</u>

Plaintiff argues that she has "pleaded a First Amendment violation" because "she was not granted a religious exemption, and her religious beliefs were not even considered." Opp'n 21. As discussed above, the Second Circuit has considered facial Free Exercise challenges to the Vaccine Mandate pursuant to rational basis review and has found that the Vaccine Mandate "plainly satisfies this standard." *Kane I*, 19 F.4th at 166 (finding the DOE Vaccine Mandate was a "reasonable exercise of the State's power to act to protect the public health"); *NYFRL*, 125 F.4th at 330 (2d Cir. 2024) ("We previously determined that the City's Vaccine Mandate, in all its iterations, was neutral, generally applicable, and facially constitutional under the Free Exercise Clause."); *see also Fugelsang*, 2025 WL 974276, at *5 (dismissing free exercise claim brought by former New York City public school teacher who was denied religious exemption and terminated pursuant to the same DOE vaccine mandate at issue here); *Bonilla v. City of New York*, No. 22-cv-07113, 2023 WL 8372859, at *4 (S.D.N.Y. Dec. 4, 2023) (same).

As the Second Circuit's decision on this issue is binding, plaintiff's facial Free Exercise Clause challenge to the Vaccine Mandate is dismissed. *See NYFRL*, 125 F.4th at 330.

iii. <u>As-applied Challenge</u>

Plaintiff's complaint does not clearly advance an "as-applied" Free Exercise challenge to the Vaccine Mandate. In the section of her complaint advancing her First Amendment claim, plaintiff states only that as a "result of the Defendant's actions," plaintiff was deprived of her First Amendment right "to practice her religion guaranteed under the First Amendment to the United States Constitution." AC ¶¶ 42, 46. In her opposition to defendant's motion to dismiss, plaintiff states that she "was not allowed to

16

practice her religion because she was not granted a religious exemption, and her religious beliefs were not even considered." Opp'n 21. Additionally, in the section of her opposition addressing this claim, plaintiff only cites to one case addressing a Free Exercise clause challenge, and the section of that case to which she cites analyzes a facial challenge. *See* Opp'n 20–21; *see also Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 533.[6] Nevertheless, the Court considers whether the allegations in plaintiff's complaint are sufficient to allege that the Vaccine Mandate, as applied to plaintiff's employment, violated plaintiff's right to the free exercise of her religion.

Plaintiff's complaint does not allege that plaintiff's exemption request was denied because of an improper consideration of her faith-based objection to the vaccine. Instead, plaintiff alleges that defendant denied her vaccine exemption request and stated that her request would place an "undue burden" on the DOE. AC ¶ 24. At oral argument, plaintiff clarified that the DOE provided this rationale upon her original denial. AC ¶¶ 17, 24; Hr'g dated May 28, 2025 ("May 28 Tr.") 16:15–23 (draft on file with the Court). Plaintiff provides no further factual allegations regarding the initial denial or her subsequent appeal. May 28 Tr. 16:24–17:9. Plaintiff's complaint therefore contains no allegations which would tend to show that the finding of undue burden was erroneous or pretextual. In fact, the "hardship that the presence of unvaccinated employees would pose for the DOE has been well-documented by courts in this circuit." *Fugelsang*, 2025 WL 974276, at *3 (collecting cases). In *NYFRL*, the Second Circuit noted the Citywide Panel's finding that the physical presence of individuals in the classroom "while unvaccinated" presented

---

[6]     Plaintiff's only other citation in this section is to a criminal matter. In that case, the defendants presented policy objections to vaccine mandates, which the court found did not excuse an alleged criminal scheme to sell falsified vaccination cards. *See People v. Clifford*, 204 N.Y.S.3d 749, 758 (N.Y. Sup. Ct. 2024). This case is clearly inapplicable.

"a risk to the vulnerable and still primarily unvaccinated student population." *NYFRL*, 125 F.4th at 333.

Thus, plaintiff's allegation that her religious accommodation request was denied because of undue hardship, without any factual allegations to demonstrate that the denial was premised on religious animus or that the explanation of undue hardship was pretextual, is insufficient to make out a constitutional claim for religious discrimination. *See NYFRL*, 125 F.4th at 333 (affirming dismissal of as-applied challenges where the Citywide Panel found that "irrespective of their sincerely held religious beliefs, [plaintiffs'] requests presented an undue hardship" and plaintiffs failed to present a "more-than-conclusory allegation" that this finding was erroneous or pretextual). Having failed to allege that her constitutional right to the free exercise of religion was violated, plaintiff's Free Exercise claim must be dismissed.

Accordingly, defendant's motion to dismiss plaintiff's fifth cause of action for violation of her First Amendment rights is GRANTED.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss plaintiff's amended complaint is GRANTED. Plaintiff's complaint is hereby dismissed. The Clerk of Court is respectfully directed to enter judgment and close this case.

**SO ORDERED.**

                                                                                                  */s/ Natasha C. Merle*
                                                                                                  NATASHA C. MERLE
                                                                                                  United States District Judge

Dated:        June 26, 2025
                 Brooklyn, New York